**LOWENSTEIN SANDLER LLP**
Michael S. Etkin, Esq.
Nicole Fulfree, Esq.
Michael Papandrea, Esq.
1251 Avenue of the Americas, 17th Floor
New York, NY 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

***Bankruptcy Counsel to the Data Breach Plaintiffs***

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| Cambridge Analytica, LLC, | Case No. 18-11500 (SHL) |
| Debtor. | |

## DATA BREACH PLAINTIFFS' MOTION FOR AN ORDER GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY TO ALLOW SERVICE OF A DOCUMENT PRESERVATION SUBPOENA

Plaintiff[1] in the putative class action captioned *Craig Skotnicki v. Facebook, Inc. and Cambridge Analytica*, Case No.: 1:18-cv-00655-RGA (the "Skotnicki Litigation"), filed in the United States District Court for the District of Delaware (the "Delaware District Court") on behalf of himself and the putative class he seeks to represent, and plaintiffs[2] in the putative class action captioned *Ben Redmond, et al. v. Facebook, Inc., et al.*, Case No. 1:18-CV-00531-VAC-

---

[1] The current plaintiff in the Skotnicki Action is Craig Skotnicki ("Plaintiff Skotnicki").

[2] The current plaintiffs in the Redmond Action are Ben Redmond, Lindsay Rathert, Salvador Ramirez, Gerry Galipault, Kyle Westendorf, Robert Woods, and Jordan Hunstone (together, the "Redmond Action Plaintiffs," and together with Plaintiff Skotnicki, the "Data Breach Plaintiffs").

MPT (the "Redmond Action," and together with the Skotnicki Litigation, the "Data Breach Litigation"), filed in the Delaware District Court, on behalf of themselves and the putative class they seek to represent, by and through their undersigned counsel, respectfully move (the "Motion") for entry of an order granting limited relief from the automatic stay pursuant to section 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code") to allow service of a document preservation subpoena for purposes of preserving documents related to the Data Breach Litigation that are currently held or controlled by Cambridge Analytica, LLC ("Cambridge Analytica" or the "Debtor") and/or which come into Cambridge Analytica's possession or control at a future date (including any documents returned to the Debtor by the ICO (defined below)). In support of the Motion, the Data Breach Plaintiffs respectfully state as follows:

## PRELIMINARY STATEMENT[3]

1.      In 2014, Debtor Cambridge Analytica—a political analysis firm that claimed to build psychological profiles of voters to help its clients win elections[4]—improperly obtained the personal information of at least 80 million Facebook users without their knowledge, consent, or authorization (the "Data Breach"). This personally identifiable information (PII), including the users' full names, telephone numbers, mailing addresses, email addresses, ages, interests, physical locations, political and religious affiliations, relationships, "liked" pages, and group affiliations, was accessed, collected, and extracted without the users' knowledge or consent, and in violation of the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*, the Children's Internet Protection Act (CIPA), and various other state and common laws.

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them below.
[4] http://time.com/5205314/facebook-cambridge-analytica-breach/

2.      While this information was supposed to have been protected and used for only expressly disclosed and limited purposes, Cambridge Analytica was able to capitalize on this unauthorized access to improperly target users with advertisements and other communications designed and based upon their own stolen PII, including the purportedly private communications among users, collected by Facebook.  Despite Facebook's knowledge of the Data Breach and its obligations to its users, Facebook failed to notify its users that a breach had occurred; only admitting to the breach after their actionable conduct was disclosed by a whistleblower.  Illegal use of the stolen PII poses far-reaching, high-risk implications for users.

3.      As this is a liquidating case, and given the Debtor's previous misuse of sensitive information and documents, the Data Breach Plaintiffs are concerned that books, records, electronically stored information ("ESI"), and other documents ("Books and Records")[5] that have been, or may come to be in the possession or control of the Debtor, may be, or, in some instances, may have already been, transferred, abandoned, destroyed or rendered otherwise unavailable. To the extent such Books and Records are within the Debtor's possession and/or

---

[5] Books and Records, which may contain information relevant to the claims in the Data Breach Litigation, also include, but are not limited to, the following:

- Digital communications (e.g., e-mail, voice mail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Data received from GSR, Kogan, and/or Facebook;
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and
- Back Up and Archival Files (e.g., Zip, GHO).

control (or come within the Debtor's possession and/or control at a future date), the Data Breach

Plaintiffs seek limited stay relief to serve a document preservation subpoena (the "Preservation

Subpoena") to ensure that all information relevant to vindicating the rights of the victims of the

Data Breach is preserved.  The Data Breach Plaintiffs do not seek, at this time, any stay relief

that would require the Debtor or the Trustee to take any action in the Data Breach Litigation.

## JURISDICTION

4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and

1334. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested

herein is 11 U.S.C. § 362(d).

## FACTUAL BACKGROUND

**The Data Breach Litigation**

5.      The complaint in the Redmond Litigation was filed by the Redmond Plaintiffs on

April 10, 2018 [Redmond Doc. No. 1][6] (the "Redmond Complaint"), on behalf of themselves and

similarly situated individuals who are registered users of Facebook, Inc. ("Facebook") and whose

personal information was improperly and without authorization accessed and/or obtained by the

Debtor, SCL USA Inc. ("SCL USA"),[7] Facebook, and other defendants in the Redmond

Litigation.

6.      The complaint in the Skotnicki Litigation was filed by Plaintiff Skotnicki on April

---

[6] Citations to "Redmond Doc. No.__" refer to pleadings, orders, and other documents filed in the Redmond Litigation.

[7] An identical motion is being filed in connection with SCL USA's chapter 7 proceedings (*In re SCL USA Inc.*, No. 18-11501 (Bankr. S.D.N.Y. May 17, 2018)), since these cases, although related, are not currently being jointly administered.

18-11500-shl    Doc 39    Filed 07/13/18    Entered 07/13/18 16:49:53    Main Document
Pg 5 of 14

30, 2018 [Skotnicki Doc. No. 1] [8] (the "Skotnicki Complaint," and together with the Redmond Complaint, the "Class Action Complaints"), on behalf of himself and similarly situated individuals who are registered users of Facebook and whose personal information was improperly and without authorization accessed and/or obtained by the Debtor and others.

7.      Although the claims in the Skotnicki Litigation are not identical to the claims asserted in the Redmond Action, they arise from the same operative facts and circumstances (*i.e.* the Data Breach).  In total, approximately twenty-seven (27) class action cases have been filed against Facebook and Cambridge Analytica across the country.

8.      Counsel for the Data Breach Plaintiffs in the Data Breach Litigation filed a *Motion to Transfer and for Consolidation* [MDL No. 2843] (the "Consolidation Motion") before the Judicial Panel on Multidistrict Litigation (the "MDL Panel"), seeking to consolidate the twenty-seven (27) pending class action cases and transfer them to the Delaware District Court.

9.      On May 3, 2018, the Redmond Plaintiffs and Facebook filed a joint stipulation providing that the requirement for Facebook to move, answer, or otherwise respond to the Redmond Complaint, would be stayed pending the decision of the MDL Panel on the pending Consolidation Motion.  The Joint Stipulation also provides that in the event the Consolidation Motion is denied, Facebook will have thirty (30) days from the date of such denial to move, answer, or otherwise respond to the Redmond Complaint. See Redmond Doc. No. 14.

10.     On May 23, 2018, the Data Breach Plaintiffs filed motions in both the Redmond and Skotnicki Litigation seeking the entry of orders preserving certain documents held or controlled by Cambridge Analytica Holdings LLC ("Cambridge Holdings"), a non-Debtor, for

---

[8] Citations to "Skotnicki Doc. No.__" refer to pleadings, orders, and other documents filed in the Skotnicki Litigation.

purposes of preserving discoverable evidence held by Holdings. [Redmond Doc. No. 19; Skotnicki Doc. No. 7] (the "Document Preservation Motions").

11.     On June 6, 2018, the MDL Panel entered an order (the "Transfer Order") requiring that the actions relating to the allegations about misuse of Facebook user data pending outside the U.S. District Court for the Northern District of California (the "Northern District of California"), including the Data Breach Litigation, be transferred to the Northern District of California, and assigning the litigation to the Honorable Vince Chhabria for coordinated or consolidated pretrial proceedings (the "Consolidated Consumer Privacy Litigation").  The Court in the Consolidated Consumer Privacy Litigation has scheduled an initial case management conference to consider the appointment of lead counsel for July 18, 2018.  See Case No. 18-md-2843 (N.D. Cal.), ECF No. 1.

**The Bankruptcy and Related Proceedings**

12.     On May 17, 2018, Cambridge Analytica filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

13.     On May 17, 2018, SCL USA filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.  SCL USA's bankruptcy proceeding is captioned, *In re SCL USA Inc.*, No. 18-11501 (Bankr. S.D.N.Y. May 17, 2018) (the "SCL USA Bankruptcy Proceedings").

14.     SCL Group Limited; ("SCL Group"); SCL Elections Ltd. ("SCL Elections"); SCL Analytics ("SCL Analytics"); SCL Commercial Limited ("SCL Commercial"); SCL Social Limited ("SCL Social"); and Cambridge Analytica (UK) Limited ("Cambridge UK," and collectively, the "Foreign Cambridge Debtors") have also filed insolvency proceedings in the High Court of Justice, Business and Property Courts of England and Wales, and Insolvency and Companies List (ChD) on May 2, 2018 (the "UK Proceedings").  See Doc. No. 1.

15.     Upon information and belief, Cambridge Holdings is the only affiliate of the Debtor that has not sought relief in a domestic or foreign insolvency proceeding.

16.     On May 21, 2018, Salvatore LaMonica was appointed as the chapter 7 trustee (the "Trustee") of the Debtor's estate.

17.     On May 31, 2018, the Debtor filed its Schedules of Assets and Liabilities [Doc. No. 11] ("Schedules") and Statement of Financial Affairs [Doc. No. 12] (the "SOFAs").  The *Global Notes Regarding the Debtor's Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "Global Notes") indicate that several of the computer servers (the "Servers") containing the vast majority of the Debtor's financial and other records that were located and maintained at the Foreign Cambridge Debtors' London offices, were seized by the Information Commissioner's Office (the "ICO") of the United Kingdom (the "UK") in connection with the UK Proceedings on or about March 23, 2018.  The Global Notes state that despite the Debtor's efforts, it has been unable to obtain the Servers from the ICO, and that without access to the records and information contained on the Servers, the Debtor's ability to provide complete and accurate Statements and Schedules was significantly inhibited.  See Global Notes p. 2-3.

18.     According to the Global Notes, on April 27, 2018, the former subsidiaries of the Debtor—Cambridge Analytica Political LLC ("Cambridge Political"), Cambridge Analytica Commercial LLC ("Cambridge Commercial"), and Anaxi Solutions Inc. ("Anaxi Solutions")— were merged into the Debtor (the "2018 Merger"), leaving the Debtor as the surviving entity.  In the Global Notes, the Debtor also clarifies that as of the Petition Date, the Debtor had no subsidiaries because Cambridge Political, Cambridge Commercial, and Anaxi Solutions did not exist. See Global Notes p. 14-15.  The Global Notes also provide that approximately one month

prior to the 2018 Merger, SCL Group Inc. had changed its name to Anaxi Solutions Inc.  See
Global Notes p. 6-7.

19.    On June 21, 2018, the Bankruptcy Code section 341(a) meeting of creditors (the
"341 Meeting") was held.  At the 341 Meeting, Julian Wheatland—the Debtor's principal and
signatory to the Schedules and Statements—reiterated that certain of the Debtor's financial
information and other records had been seized by the ICO in the UK Proceedings. He detailed
the various data storage systems the Debtor maintained in the ordinary course of business, and
indicated that he was unsure whether he or any other representatives of the Debtor had
continuing access to certain web-based service accounts.[9]

## RELIEF REQUESTED

20.    By this Motion, the Data Breach Plaintiffs request entry of an order granting
limited relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code,
authorizing service on the Debtor of a document preservation subpoena in the form annexed
hereto as Exhibit A, for purposes of preserving documents related to the Data Breach Litigation
that are currently held or controlled by the Debtor and/or which come into the Debtor's
possession or control at a future date.

## ARGUMENT

I.    **CAUSE EXISTS FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT
TO SECTION 362(d)(1) OF THE BANKRUPTCY CODE**

21.    Section 362(d)(1) of the Bankruptcy Code provides that this Court shall grant
relief from the automatic stay upon a showing of "cause" by a party in interest. 11 U.S.C. §
362(d)(1). The burden of proof on a motion to lift the automatic stay is a shifting one. First, the
moving party must make a prima facie showing that "cause" exists; once the movant has

---

[9] The Data Breach Plaintiffs have requested, but not yet received, a copy of the audio recording of the 341 Meeting
from the Office of the United States Trustee.

satisfied its initial burden, then the burden shifts to the debtor to show that "cause" does not

exist. <u>See</u> 11 U.S.C. § 362(g)(1); <u>Sonnax Indus., Inc. v. Tri Component Prods. Corp.</u>, 907 F.2d

1280, 1285 (2d Cir. 1990).

22.    Although the Bankruptcy Code does not define "cause," the Second Circuit has

set forth twelve (12) factors–commonly referred to as the <u>Sonnax</u> factors—to guide a court's

determination on whether cause is present:

(1)    whether relief would result in a partial or complete resolution of the issues;

(2)    lack of any connection with or interference with the bankruptcy case;

(3)    whether the other proceeding involves the debtor as a fiduciary;

(4)    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5)    whether the debtor's insurer has assumed full responsibility for defending it;

(6)    whether the action primarily involves third parties;

(7)    whether litigation in another forum would prejudice the interests of other creditors;

(8)    whether the judgment claim arising from the other action is subject to equitable subordination;

(9)    whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10)    the interests of judicial economy and the expeditious and economical resolution of litigation;

(11)    whether the parties are ready for trial in the other proceeding; and

(12)    impact of the stay on the parties and the balance of harms.

<u>In re Quigley Co.</u>, 361 B.R. 723, 743-44 (Bankr. S.D.N.Y. 2007) (citing <u>Sonnax</u>, 907 F.2d at

1286).  However, not all of the twelve (12) <u>Sonnax</u> factors are relevant for every case. <u>See</u> <u>id.</u>

Nor is a court required to give each of the factors equal weight in making its determination. <u>See</u>

<u>In re Burger Boys, Inc.</u>, 183 B.R. 682, 688 (S.D.N.Y. 1994) (holding "only those factors relevant

to a particular case need be considered . . . and the Court need not assign them equal weight.").

23.    Due to the limited and non-controversial nature of the relief sought herein, many

of the Sonnax factors are inapplicable to the current analysis.  However, consideration of the

relevant Sonnax factors clearly supports granting limited relief from the automatic stay to allow

service of the Preservation Subpoena.

A.    The Relevant Sonnax Factors Weigh in Favor of Granting the Limited and
Straightforward Relief Necessary to Allow Service of the Preservation Subpoena.

24.    By the Motion, the Data Breach Plaintiffs seek straightforward and narrowly-

tailored relief that is necessary to ensure the proper maintenance of the Books and Records in the

Debtor's possession or control (or which come to be in the Debtor's possession or control) until

such Books and Records are made available (subject to any protective order or confidentiality

agreement) to the Data Breach Plaintiffs for inspection and copying upon the earlier of the

dissolution of any relevant stay or further order from this Court.  The Data Breach Plaintiffs are

not requesting that the Debtor produce and make available the Books and Records at this time,

but merely that it be ordered to protect, maintain and safeguard the Books and Records until such

time as the Data Breach Plaintiffs may obtain discovery in accordance with applicable law. Thus,

compliance with the Preservation Subpoena should require little affirmative action by the Debtor

or any of its representatives.

25.    Should the Books and Records be lost or rendered otherwise unavailable, the Data

Breach Plaintiffs and the putative class will be severely prejudiced. These Books and Records

likely contain information relevant to and necessary for the prosecution of the Data Breach

Litigation. Conversely, preservation of the Books and Records, as requested here, will not

impose a burden on the Debtor or impact this chapter 7 proceeding. In fact, such preservation is

consistent with the requirements of the Bankruptcy Code.  See 11 U.S.C. § 521(a)(3) ("The

debtor shall--. . . if a trustee is serving in the case . . . surrender to the trustee all property of the

estate and any recorded information, including books, documents, records, and papers, relating to property of the estate . . . .").  The relief requested herein does not infringe in any way upon the Debtor's efforts to liquidate, and no distraction will result from such an obligation which should be voluntarily undertaken in any event.  Indeed, the purpose of the automatic stay is "to prevent interference with, or diminution of, the debtor's property during the pendency of [bankruptcy]."  Teledyne Industries Inc. v. Eon Cmp., 373 F. Supp. 191 (S.D.N.Y. 1974).  The relief requested here will neither interfere with nor diminish the Debtor's interest in estate property, as the Preservation Subpoena will not require anything from the Debtor or its representatives, other than to preserve the Books and Records.[10]

26.    Courts have held that in those instances where the burden on the debtor is outweighed by the harm to the requesting party, as is the situation here, modification of the automatic stay is warranted.  See Norton Co. v. Johns-Manville Cmp., 39 B.R. 659, 662 (S.D.N.Y. 1984) (noting that because there was no evidence that any expenses incurred by the debtor would imperil its reorganization or the interests of the creditors, the court permitted the requested discovery); see also Teledyne Indus. Inc. v. Eon Cmp., 373 F. Supp. 191 (S.D.N.Y. 1974).  Similarly, here, the Debtor will incur little, if any, additional expense because the Data Breach Plaintiffs request only that the Books and Records be preserved.  See In re U.S. Brass Corp., 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994) (noting stay relief was appropriate, in part, because the limited relief sought required minimal cost and effort by the debtor).

27.    The foregoing factors suffice to constitute cause within the meaning of section 362(d)(1) of the Bankruptcy Code.

---

[10] The Data Breach Plaintiffs reserve their rights to seek additional relief in the future as the need may arise or as may be appropriate.

## **Waiver of Bankruptcy Rule 4001(a)(3)**

28.    The Data Breach Plaintiffs also seek a waiver of any stay of the effectiveness of

an order approving this Motion. Pursuant to Bankruptcy Rule 4001(a)(3), "[a]n order granting a

motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until

the expiration of 14 days after the entry of the order, unless the Court orders otherwise." FED. R.

BANKR. P. 4001(a)(3). The Data Breach Plaintiffs request that any order entered granting this

Motion be effective immediately so that the Data Breach Plaintiffs may proceed immediately

with service of the Preservation Subpoena. If such order does not become immediately effective,

the Debtor could take actions that would prejudice the Data Breach Plaintiffs with respect to the

loss of evidence.

## **CONCLUSION**

29.    Based on the facts and authorities set forth above, the Data Breach Plaintiffs

respectfully request that the Court grant this Motion and enter an order granting (i) relief from

the automatic stay to permit the Data Breach Plaintiffs to serve the Preservation Subpoena on the

Debtor; and (ii) such other and further relief as the Court deems just and proper.


Dated:  July 13, 2018                          **LOWENSTEIN SANDLER LLP**
                                               */s/  Michael S. Etkin*
                                               Michael S. Etkin, Esq.
                                               Nicole Fulfree, Esq.
                                               Michael Papandrea, Esq.
                                               1251 Avenue of the Americas, 17th Floor
                                               New York, NY 10020
                                               (212) 262-6700 (Telephone)
                                               (212) 262-7402 (Facsimile)
                                               metkin@lowenstein.com
                                               nfulfree@lowenstein.com
                                               mpapandrea@lowenstein.com

                                               -and-

                                               One Lowenstein Drive

Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

-and-

**RUYAK CHERIAN LLP**
Robert F. Ruyak, Esq.
Korula T. Cherian, Esq.
Richard Ripley, Esq.
Rebecca Anzidei, Esq.
1700 K Street NW, Suite 810
Washington, DC  20006
Telephone: (202) 838-1560
robertr@ruyakcherian.com
sunnyc@ruyakcherian.com
rickr@ruyakcherian.com
rebeccaa@ruyakcherian.com

-and-

**MOTLEY RICE LLC**
Marlon Kimpson, Esq.
Jodi Westbrook Flowers, Esq.
Ann Ritter, Esq.
Fred Baker, Esq.
Andrew Arnold, Esq.
Annie Kouba, Esq.
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
mkimpson@motleyrice.com
jflowers@motleyrice.com
aritter@motleyrice.com
fbaker@motleyrice.com
aarnold@motleyrice.com
akouba@motleyrice.com

-and-

**FIELDS PLLC**
Richard W. Fields, Esq.
1700 K Street, NW, Suite 810
Washington, DC 20006
(800) 878-1432
Fields@fieldslawpllc.com

-and-

**MCCUE & PARTNERS, LLP**
Matthew Jury, Esq.
Fourth Floor
158 Buckingham Palace Road
London SWIW 9TR
United Kingdom
matthew.jury@mccue-law.com

***Counsel to the Data Breach Plaintiffs***