**LOWENSTEIN SANDLER LLP**
Michael S. Etkin, Esq.
Nicole Fulfree, Esq.
Michael Papandrea, Esq.
1251 Avenue of the Americas, 17th Floor
New York, NY 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Bankruptcy Counsel to the Data Breach Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Cambridge Analytica, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 18-11500 (SHL)<br><br>**Hearing Date: August 21, 2018 at 11:00 a.m. (ET)**<br>**Obj. Deadline: August 14, 2017 at 4:00 p.m. (ET)** |

**DATA BREACH PLAINTIFFS' MOTION PURSUANT TO
BANKRUPTCY RULE 2004 FOR AN ORDER DIRECTING THE
PRODUCTION OF DOCUMENTS FROM, AND AUTHORIZING THE
EXAMINATION OF, CAMBRIDGE ANALYTICA LLC**

Plaintiff[1] in the putative class action captioned *Craig Skotnicki v. Facebook, Inc. and Cambridge Analytica*, Case No.: 1:18-cv-00655-RGA (the "Skotnicki Litigation"), filed in the United States District Court for the District of Delaware (the "Delaware District Court") on behalf of himself and the putative class he seeks to represent, and plaintiffs[2] in the putative class

---

[1] The current plaintiff in the Skotnicki Action is Craig Skotnicki ("Plaintiff Skotnicki").

[2] The current plaintiffs in the Redmond Action are Ben Redmond, Lindsay Rathert, Salvador Ramirez, Gerry Galipault, Kyle Westendorf, Robert Woods, and Jordan Hunstone (together, the "Redmond Action Plaintiffs," and together with Plaintiff Skotnicki, the "Data Breach Plaintiffs").

action captioned *Ben Redmond, et al. v. Facebook, Inc., et al.*, Case No. 1:18-CV-00531-VAC-MPT (the "Redmond Action," and together with the Skotnicki Litigation, the "Data Breach Litigation"), filed in the Delaware District Court, on behalf of themselves and the putative class they seek to represent, by and through their undersigned counsel, respectfully move (the "Motion") for entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") directing the production of documents from, and authorizing the examination of, debtor Cambridge Analytica, LLC ("Cambridge Analytica" or the "Debtor"). In support of the Motion, the Data Breach Plaintiffs respectfully state as follows:

## PRELIMINARY STATEMENT[3]

1.      In 2014, Debtor Cambridge Analytica—a political analysis firm that claimed to build psychological profiles of voters to help its clients win elections[4]—improperly obtained the personal information of at least 80 million Facebook, Inc. ("Facebook") users without their knowledge, consent, or authorization (the "Data Breach"). This personally identifiable information (PII), including the users' full names, telephone numbers, mailing addresses, email addresses, ages, interests, physical locations, political and religious affiliations, relationships, "liked" pages, and group affiliations, was accessed, collected, and extracted without the users' knowledge or consent, and in violation of the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*, the Children's Internet Protection Act (CIPA), and various other state and common laws.

2.      While this information was supposed to have been protected and used for only expressly disclosed and limited purposes, Cambridge Analytica was able to capitalize on this unauthorized access to improperly target users with advertisements and other communications designed and based upon their own stolen PII, including the purportedly private communications

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them below.
[4] http://time.com/5205314/facebook-cambridge-analytica-breach/

among users, collected by Facebook. Despite Facebook's knowledge of the Data Breach and its obligations to its users, Facebook failed to notify its users that a breach had occurred; only admitting to the breach after their actionable conduct was disclosed by a whistleblower. Illegal use of the stolen PII poses far-reaching, high-risk implications for users.

3. Given the Debtor's previous misuse of sensitive information and documents, certain complicating factors inhibiting the Debtor's access to its historical data, and the lack of clarity on the scope of those inhibitions demonstrated by a significant caveat in the Global Notes to the Debtor's Schedules and Statements (which seemed to be further complicated by the testimony at the 341 Meeting), the Data Breach Plaintiffs are concerned with the sufficiency of the information thus far provided by the Debtor in connection with its bankruptcy case. Specifically, in its Schedules and Statements, and at the 341 Meeting, the Debtor admitted that various information disclosed in this bankruptcy case may be incomplete or entirely omitted, including information with respect to the Debtor's financial records, the value of certain assets disclosed in the Debtor's Schedules, lists of customers and clients, and a certain Services Agreement that appears to have governed the business relationship between Cambridge Analytica and its affiliates.

4. Accordingly, in order to ensure the estate and its creditors, including the Data Breach Plaintiffs, have as full and complete information as possible with respect to the Debtor's affairs, property, and financial condition, the Data Breach Plaintiffs seek an order from the Court directing the Debtor to produce the documents and information sought by the 2004 Subpoena and authorize the examination of the Debtor pursuant to Bankruptcy Rule 2004.

5. To be clear, the Data Breach Plaintiffs are not seeking documents or information with respect to the Data Breach Litigation. In fact, simultaneously with the filing of this Motion,

the Data Breach Plaintiffs are filing a separate motion seeking stay relief to file a document preservation subpoena on the Debtor in order to ensure the preservation—not production—of any documents related to the Data Breach Litigation. This Motion, on the other hand, seeks documents and information strictly with respect to the property and financial condition of the Debtor's bankruptcy estate in light of the incomplete information provided by the Debtor in this bankruptcy case to date.

## JURISDICTION

6. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 2004.

## FACTUAL BACKGROUND

7. On May 17, 2018, Cambridge Analytica filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

8. On May 17, 2018, SCL USA Inc. ("SCL USA") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. SCL USA's bankruptcy proceeding is captioned, *In re SCL USA Inc.*, No. 18-11501 (Bankr. S.D.N.Y. May 17, 2018) (the "SCL USA Bankruptcy Proceedings").[5]

9. SCL Group Limited; ("SCL Group"); SCL Elections Ltd. ("SCL Elections"); SCL Analytics ("SCL Analytics"); SCL Commercial Limited ("SCL Commercial"); SCL Social Limited ("SCL Social"); and Cambridge Analytica (UK) Limited ("Cambridge UK," and

---

[5] A substantially similar motion is being filed in connection with the SCL USA Bankruptcy Proceedings, since these cases, although related, are not currently being jointly administered.

collectively, the "Foreign Cambridge Debtors") have also filed insolvency proceedings (the "UK Proceedings") in the High Court of Justice, Business and Property Courts of England and Wales, and Insolvency and Companies List (ChD) on May 2, 2018.  See Doc. No. 1.

10. Upon information and belief, Cambridge Analytica Holdings LLC ("Cambridge Holdings") is the only affiliate of the Debtor that has not sought relief in a domestic or foreign insolvency proceeding.

11. On May 21, 2018, Salvatore LaMonica was appointed as the chapter 7 trustee (the "Trustee") of the Debtor's estate.

12. On May 31, 2018, the Debtor filed its Schedules of Assets and Liabilities [Doc. No. 11] ("Schedules") and Statement of Financial Affairs [Doc. No. 12] (the "Statements").  The *Global Notes Regarding the Debtor's Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "Global Notes") indicate that several of the computer servers (the "Servers") containing the vast majority of the Debtor's financial and other records that were located and maintained at the Foreign Cambridge Debtors' London offices, were seized by the Information Commissioner's Office (the "ICO") of the United Kingdom (the "UK") on or about March 23, 2018.  The Global Notes state that despite the Debtor's efforts, it has been unable to obtain the Servers from the ICO, and that without access to the records and information contained on the Servers, the Debtor's ability to provide complete and accurate Schedules and Statements was "significantly inhibited . . . [and] there can be no assurance that the Schedules and Statements are accurate and/or complete."  See Global Notes p. 2-3.  For example, the Global Notes state that due to the seizure of the Servers, the Debtor's disclosure in its Statements regarding transfers of property made prior to the Debtor's bankruptcy filing may be incomplete.  See Global Notes p. 14.

13. According to the Global Notes, on April 27, 2018, the former subsidiaries of the Debtor—Cambridge Analytica Political LLC ("Cambridge Political"), Cambridge Analytica Commercial LLC ("Cambridge Commercial"), and Anaxi Solutions Inc. ("Anaxi Solutions")—were merged into the Debtor (the "2018 Merger"), leaving the Debtor as the surviving entity. The Global Notes also provide that approximately one month prior to the 2018 Merger, SCL Group Inc. had changed its name to Anaxi Solutions Inc. See Global Notes p. 6-7.

14. On June 21, 2018, the Bankruptcy Code section 341(a) meeting of creditors (the "341 Meeting") was held. At the 341 Meeting, Julian Wheatland—the Debtor's principal and signatory to the Schedules and Statements—reiterated that certain of the Debtor's financial information and other records had been seized by one of the administrators in the UK Proceedings.[6] He discussed the various data storage systems the Debtor maintained in the ordinary course of business, and indicated that he was unsure whether he or any other representatives of the Debtor had continuing access to certain web-based service accounts. While the Debtor did not disclose any customer lists or similar compilations in its Schedules, Mr. Wheatland's testimony and the supplemental comments of counsel made clear that the non-disclosure of a particular asset such as a customer list *could not* be interpreted as an affirmative representation that the Debtor does not, in fact, own any customer lists.

15. Mr. Wheatland similarly explained that certain information was allegedly unknown to him, such as the value of certain artwork disclosed on the Debtor's Schedules, as that information is in the hands of Alexander Nix—the former CEO of SCL Elections who sold his interest in Cambridge Analytica to Emerdata Limited (the managing member of Cambridge Analytica). Moreover, Mr. Wheatland indicated that approximately $8.7 million in unsecured

---

[6] The Data Breach Plaintiffs have requested, but not yet received, a copy of the audio recording of the 341 Meeting from the Office of the United States Trustee.

debt listed in the Debtor's Schedules may relate to certain transactions involving Mr. Nix and the Foreign Cambridge Debtors. Debtor's counsel also indicated at the 341 Meeting that the Debtor anticipates filing amended Schedules and Statements to provide, additional information regarding, among other things, a certain services agreement (the "Services Agreement") between Cambridge Analytica and SCL Elections which governed Cambridge Analytica's business model between its affiliates. To date, the Statements and Schedules have not been amended, and thus, the Data Breach Plaintiffs have not received additional information regarding any of the above.

## RELIEF REQUESTED

16.     To determine the universe of assets and information related thereto that Cambridge Analytica, its estate and affiliates have, the Data Breach Plaintiffs request entry of an order directing Cambridge Analytica to produce all of the documents in the various entities custody, control, or possession that are described in the subpoena attached hereto as Exhibit A (the "2004 Subpoena") within thirty (30) days after the entry of an order, if any, granting this Motion, or such other dates to which the Data Breach Plaintiffs may agree.

17.     Additionally, the Data Breach Plaintiffs request that the Court order Cambridge Analytica to provide testimony, through a corporate designee with requisite personal knowledge, with respect to documents and information sought by the 2004 Subpoena, on such dates and times as Cambridge Analytica and the Data Breach Plaintiffs may mutually agree, or the Court may order after the production of documents requested in this Motion, but in no event later than sixty (60) days after the entry of an order, if any, granting this Motion.

## BASIS FOR RELIEF

18.     Bankruptcy Rule 2004 provides that upon the request of "any party in interest," the Court may direct the examination of and production of documents by "any entity" pertaining

to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtors' estate . . . ." Examinations under Bankruptcy Rule 2004 may include within their scope, among other things, any matter which may relate to the property and assets of the estate, the financial condition of the debtor, and any matter which may affect the administration of the debtor's estate.

19. Rule 2004 examinations "are appropriate for revealing the nature and extent of the bankruptcy estate . . . and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citing *In re Duratech Indus., Inc.*, 241 B.R. 283, 289 (E.D.N.Y. 1999)); *see also In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr N.D.N.Y. 1996). Bankruptcy Rule 2004 provides creditors with broad rights to examine a third party's records. *In re Snyder*, 52 F.3d 1067 (5th Cir. 1995) (citing *Cameron v. U.S.*, 231 U.S. 710, 713 (1914)). Thus, courts recognize that Bankruptcy Rule 2004 examinations are generally broad, unfettered, and in the nature of fishing expeditions. *See In re Enron Corp.*, 281 B.R. at 840 (citing *In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr. D. Mass. 1983)).

20. To obtain approval of an examination pursuant to Bankruptcy Rule 2004, the party seeking the examination must show "good cause" for the examination. *In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017). In evaluating a request for a Bankruptcy Rule 2004 examination, the Court must "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by the examination." *Id.*

21. Here, the documents, information, and examination sought by the 2004 Subpoena are basic and necessary to help ensure the estate and its creditors have full and complete information regarding the Debtor's business affairs and financial condition. It is critical that the

Debtor disclose as much information as possible regarding the value of its assets and the nature of its prepetition transactions and businesses. This information is highly relevant to the liquidation of the Debtor's businesses and the interests of the Data Breach Plaintiffs and similarly situated creditors far outweigh any prejudice to the Debtor, as the very purpose of Bankruptcy Rule 2004 is to ensure complete disclosure regarding the Debtor's affairs, conduct, and financial condition.

22. To the extent such information is allegedly unavailable due to the seizure of the Debtor's Servers, the examination sought by the Data Breach Plaintiffs may reveal details regarding precisely what information may be missing from the Debtor's records, why such information may have been taken in connection with the UK Proceedings, if it is possible for the Debtor to retrieve any missing information, and what alternative sources of such information may exist. Given that the underpinnings of the Debtor's bankruptcy filing involve the misappropriation of sensitive information in the Debtor's possession, the lack of clarity with respect to what information the Debtor has or does not have, and what information the Debtor has not thoroughly disclosed in its Schedules and Statements must be explored.

23. Therefore, the Data Breach Plaintiffs respectfully submit that good cause exists to direct the production of documents by the Debtor and the examination of the Debtor pursuant to the 2004 Subpoena and Bankruptcy Rule 2004.

[*Remainder of page intentionally left blank*]

# CONCLUSION

24. Based on the facts and authorities set forth above, the Data Breach Plaintiffs respectfully request that the Court grant this Motion and enter an order (i) directing the production of documents by Cambridge Analytica pursuant to Bankruptcy Rule 2004; (ii) authorizing the examination of Cambridge Analytica pursuant to Bankruptcy Rule 2004; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: July 13, 2018

**LOWENSTEIN SANDLER LLP**
*/s/ Michael S. Etkin*
Michael S. Etkin, Esq.
Nicole Fulfree, Esq.
Michael Papandrea, Esq.
1251 Avenue of the Americas, 17th Floor
New York, NY 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)
metkin@lowenstein.com
nfulfree@lowenstein.com
mpapandrea@lowenstein.com

-and-

One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

-and-

**RUYAK CHERIAN LLP**
Robert F. Ruyak, Esq.
Korula T. Cherian, Esq.
Richard Ripley, Esq.
Rebecca Anzidei, Esq.
1700 K Street NW, Suite 810
Washington, DC 20006
Telephone: (202) 838-1560
robertr@ruyakcherian.com
sunnyc@ruyakcherian.com
rickr@ruyakcherian.com
rebeccaa@ruyakcherian.com

-and-

**MOTLEY RICE LLC**
Marlon Kimpson, Esq.
Jodi Westbrook Flowers, Esq.
Ann Ritter, Esq.
Fred Baker, Esq.
Andrew Arnold, Esq.
Annie Kouba, Esq.
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
mkimpson@motleyrice.com
jflowers@motleyrice.com
aritter@motleyrice.com
fbaker@motleyrice.com
aarnold@motleyrice.com
akouba@motleyrice.com

-and-

**FIELDS PLLC**
Richard W. Fields, Esq.
1700 K Street, NW, Suite 810
Washington, DC 20006
(800) 878-1432
Fields@fieldslawpllc.com

-and-

**MCCUE & PARTNERS, LLP**
Matthew Jury, Esq.
Fourth Floor
158 Buckingham Palace Road
London SWIW 9TR
United Kingdom
matthew.jury@mccue-law.com

***Counsel to the Data Breach Plaintiffs***

-11-