**LaMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500
Jordan Pilevsky, Esq.
Michael T. Rozea, Esq.

*Attorneys for Salvatore LaMonica, as Chapter 7 Trustee*

**Relates to Adjourned Hearing Scheduled for May 1, 2019 at 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| CAMBRIDGE ANALYTICA LLC,<br>AKA CAMBRIDGE ANALYTICA COMMERCIAL LLC<br>AKA CAMBRIDGE ANALYTICA POLITICAL LLC<br>AKA ANAXI SOLUTIONS INC.,<br><br>Debtor. | Case No. 18-11500 (SHL) |

---------------------------------------------------------------------x

**CHAPTER 7 TRUSTEE'S RESPONSE AND OBJECTION TO CREDITOR KAREN SBRIGLIO'S MOTION PURSUANT TO BANKRUPTCY RULE 2004 FOR AN ORDER DIRECTING THE PRODUCTION OF DOCUMENTS FROM CAMBRIDGE ANALYTICA LLC**

Salvatore LaMonica, Esq., solely in his capacity as the Chapter 7 Trustee (the "Trustee") of the bankruptcy estates of SCL USA, Inc. (the "SCL Debtor") and Cambridge Analytica LLC a/k/a Cambridge Analytica Commercial LLC, a/k/a Cambridge Analytica Political LLC a/k/a Anaxi Solutions Inc. (the "Cambridge Debtor", and together with the SCL Debtor, the "Debtors"), by his counsel, LaMonica Herbst & Maniscalco, LLP, submits this response and objection (the "Objection") to *Creditor Karen Sbriglio's Motion Pursuant to Bankruptcy Rule 2004 For an Order Directing the Production of Documents From Cambridge Analytica LLC* (the "Motion").[1]

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the Motion.

## BACKGROUND

1. Karen Sbriglio ("Sbriglio") is a plaintiff in a derivative action brought in Delaware Chancery Court against certain Facebook directors and officers (the "Delaware Derivative Action").

2. Importantly, neither the Debtors nor any of their affiliates are named as a defendant in the Delaware Derivative Action.[2]

3. On January 7, 2019, by oral ruling (the "Stay Ruling") the Delaware Chancery Court stayed all proceedings, including formal discovery requests, in the Delaware Derivative Action.

4. On March 13, 2019, Sbriglio purchased a claim initially filed by Rod Foster and denominated Claim no. 6 by the Clerk of the Court (the "Purchased Claim"), a copy of which is attached hereto as Exhibit A. The Purchased Claim has a face value of $650 and is filed against the estate of the Cambridge Debtor.

5. Eight days after purchasing the Purchased Claim, Sbriglio filed the Motion, which requests access to the exact same documents provided to the Data Breach Plaintiffs (who have asserted claims against and are creditors of the Debtors' estates).

## PRELIMINARY STATEMENT

6. The only credible explanation for Sbriglio's purchase of the Purchased Claim is an ill-fated attempt to manufacture standing to obtain discovery under Bankruptcy Rule 2004 for use in the Delaware Derivative Action that is wholly unrelated to these bankruptcy cases (the "Chapter 7 Cases"). Moreover, Sbriglio seeks discovery at the expense of the Debtors' estates,

[2] *See Sbriglio et al., derivatively on behalf of Facebook, Inc. v. Mark Zuckerberg, Sheryl Sandberg, Marc Andreessen, Erskine B. Bowles, Susan Desmond-Hellmann, Reed Hastings, Jan Koum, Peter A. Thiel, and Pricewaterhousecoopers LLP*, Civ. No. 2018-0307-JRS (Del. Ch. 2018).

their creditors and the Trustee's professionals, despite the fact that the Stay Ruling stayed discovery in the Delaware Derivative Action. Given the limited resources of these estates, the Trustee should not be required to incur the costs and expenses of document productions and depositions for relief that is not specifically tailored to the administration of the bankruptcy estates.

7. Further, unlike the Data Breach Plaintiffs, who had claims against the Debtors, the documents Sbriglio requests are completely irrelevant to the Purchased Claim, which is a contractual claim against the Cambridge Debtor for work performed under a consulting agreement and to which discovery is not necessary. Sbriglio's statement that she filed the Motion to "to ensure the estate and its creditors, including Sbriglio, have as full and complete information as possible with respect to the Debtor's affairs, property, and financial condition"[3] is not plausible. Sbriglio only purchased the claim after first unsuccessfully attempting to persuade the Trustee that she should be granted access to the same documents as the Data Breach Plaintiffs in the 2004 Order entered on January 8, 2019 (the "Data Breach 2004 Order") without even having the ruse of a claim against the Debtors. Clearly, Sbriglio is engaging in discovery to further her interests in the Delaware Derivative Action against non-Debtors rather than in her capacity as a creditor of the Debtors' estates.

8. As a legal matter, this is a wholly improper and inappropriate use of Bankruptcy Rule 2004. As a practical matter, granting Sbriglio's motion would establish a dangerous precedent. In terms of the Debtors' cases, if the Court grants the Motion, it will likely invite other parties who have claims not against the Debtors, but rather against certain third parties such as Facebook or the Data Breach Plaintiffs, to purchase claims solely so that they can obtain the same discovery from the Debtors and/or the Trustee as Sbriglio is seeking at the expense of

[3] Motion at ¶ 30.

the Debtors, their estates, the Trustee, and all other parties in interest. More generally, granting Sbriglio's motion would violate the "pending proceedings" limitation with respect to Bankruptcy Rule 2004 and serve as unwelcome precedent that Bankruptcy Rule 2004 could be used by third parties for discovery in wholly unrelated litigation not involving the debtor. Accordingly, the Trustee respectfully requests that the Court deny Sbriglio's Motion.

## OBJECTION

### I. Sbriglio Has Not and Cannot Establish That Good Cause Exists for the Requested Bankruptcy Rule 2004 Examination

9. A Bankruptcy Rule 2004 examination may be ordered "on motion of any party in interest." *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002). Although the scope of discovery permitted under Bankruptcy Rule 2004 is broad, it is not unlimited, and the party seeking discovery has the burden of first demonstrating good cause for the requested discovery. *See, e.g., In re Metiom*, 318 B.R. 263, 268 (S.D.N.Y. 2004); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("Despite the breadth of Bankruptcy Rule 2004, it must first be determined that the examination is proper"). Good cause for the requested examination is typically shown by "establishing that the proposed examination is necessary to establish the claim of the party seeking the examination", or by showing that "denial of such request would cause the examiner undue hardship or injustice." *In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017) (citations and quotation marks omitted); *see also In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004). In order to establish cause exists, "the party seeking Rule 2004 discovery ***must show a need or undue hardship relating to the bankruptcy case in which the information is sought***, not in some other [] proceeding." *In re SunEdison, Inc.*, 562 B.R. at 251 (emphasis added).

10. In determining whether the requesting party has satisfied its burden of demonstrating good cause, a court should weigh the interest related to the bankruptcy case that the requesting party has to gain access to the information against the burden imposed by the request. One court stated that:

> Rule 2004 requires that we balance the competing interests of the parties, weighing the relevance and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production. The burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents.

*In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).

11. Even assuming that the Purchased Claim gives Sbriglio standing, Sbriglio has not satisfied her burden of demonstrating good cause exists for the relief requested. In fact, Sbriglio does not even attempt to satisfy her burden, relying instead on a conclusory statement at the end of the Motion that "good cause exists to direct the production of documents by the Debtor pursuant to the 2004 Subpoena and Bankruptcy Rule 2004." Motion at ¶ 30.

**A. Sbriglio Cannot Demonstrate a Need or Undue Hardship Related to These Chapter 7 Cases**

12. Sbriglio's failure to even attempt to carry her burden to establish good cause for the examination is not surprising; while Sbriglio may have an interest in gaining information for use in the Delaware Derivative Action against non-Debtors, there is simply no need or hardship that *relates to these Chapter 7 Cases*. When a creditor fails to demonstrate a need for the requested discovery to satisfy such creditor's claim or an undue hardship related to that claim, courts find that there is not good cause and deny the request. *See, e.g., In re SunEdison, Inc.*, 562 B.R. 243, 251 (Bankr. S.D.N.Y. 2017) (denying rule 2004 request because the creditor "has not established cause for most of the information it seeks. The cause it is required to demonstrate must relate to these cases" and "the primary focus of the [Bankruptcy Rule 2004] *Application* is the need for

information to use" in another proceeding.); *In re AOG Ent., Inc.*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016) (finding that creditor "has not demonstrated good cause to grant [Bankruptcy Rule 2004 motion] . . . [creditor] does not contend that his proposed investigation is needed to establish his claim" and "has not shown that the denial of his application will result in undue hardship or injustice."); *In re MF Global Inc.*, No. 11-02790 (MG), 2013 LEXIS 129 at *1 (Bankr. S.D.N.Y. Jan. 8, 2013) (denying Bankruptcy Rule 2004 request because movant lacked standing, but stating "[f]urther, and impermissibly, the [movant] is asking this Court to allow it to take a Rule 2004 examination in furtherance of its *own* interests, not those of the estate") (emphasis in original); *In re Alem*, 2013 WL 4840486, at *1 (Bankr. D.D.C. Sept. 10, 2013) (denying Bankruptcy Rule 2004 motion after finding that movants "make no effort to conceal that their most immediate reason for pursuing discovery from the debtor is to obtain information in support of their defenses to claims pending against them in the Superior Court. Accordingly, the Movants cannot permissibly pursue discovery under Rule 2004, and they must instead rely upon the discovery tools available to them in the Superior Court.").

13. A recent decision by Judge Glenn is particularly instructive. In *In re Bibhu LLC*, 2019 WL 171550 (Bankr. S.D.N.Y. Jan. 19, 2019), a creditor filed an application for a rule 2004 examination seeking document production from the debtor and two non-debtors. The creditor had a lawsuit pending against the two non-debtors, including claims for fraud. The court denied the rule 2004 application partially because the creditor's "unsecured claim in the bankruptcy case is based on a promissory note. It is only in the state court action against [the non-debtors] that the more-difficult-to-prove fraud claim is alleged. [Creditor] is seeking Rule 2004 discovery for the improper purpose of obtaining discovery for the pending state court civil litigation." *Id.* at *2.

14. Here, like in *Bibhu*, Sbriglio did not file the Motion because of her Purchased Claim, rather it was for the improper purpose of obtaining discovery for use in the Delaware Derivative Action. This is a much easier case than in *Bibhu*, however, because, unlike in *Bibhu*, Sbriglio not only filed the Motion for the improper purpose of obtaining discovery in unrelated state court litigation, she also purchased the Purchased Claim for that same improper purpose. If the Court granted the Motion, it would provide a roadmap for parties with no connection to these Chapter 7 Cases to burden the Debtors' estates and the Trustee in order to obtain discovery in unrelated litigation. The abuse of Bankruptcy Rule 2004 discovery for this improper purpose should not be condoned or encouraged.[4]

**B. Sbriglio's Purchasing of the Purchased Claim Precludes a Finding of Good Cause for the Requested Examination**

15. Additionally, even if Sbriglio could demonstrate that there was a need or hardship that related to her Purchased Claim and not the Delaware Derivative Action, this Court should not find good cause exists for the examination because Sbriglio's purchase of the Purchased Claim was made in bad faith.

16. When a non-party to a bankruptcy proceeding purchases a claim for a nominal value and shortly thereafter takes an action in the bankruptcy, ostensibly to further its interest as a creditor, courts deny the relief requested by such party. In *In re Keyworth*, 47 B.R. 966 (Bankr. D. Colo. 1985), in a nearly identical factual scenario, Merck, a defendant in a state

[4] Sbriglio also cannot argue that the mere fact that the Data Breach Plaintiffs were permitted access to this information is an undue hardship or injustice sufficient to establish good cause. The Data Breach Plaintiffs asserted claims in the MDL Litigation against the Debtors that predated these Chapter 7 Cases, and filed the Data Breach Plaintiffs' 2004 Motion to further their interests as a creditor of the Debtor. By contrast, Sbriglio purchased a $650 claim in order to file the Motion for the purpose of furthering her interest in litigation against non-Debtors. Accordingly, even if Sbriglio could demonstrate any undue hardship or injustice (which she cannot), it would not be in her capacity as a creditor in these Chapter 7 Cases, it would be in her capacity as a plaintiff in unrelated state court litigation against non-Debtors. Such is obviously not a basis to find that good cause exists to grant the Motion.

court lawsuit with a potential liability of over $7 million to two chapter 7 debtors, purchased a $75.00 claim for $50.00 in the debtors' chapter 7 cases and immediately filed an objection to the debtors' claimed exemption to the proceeds of the lawsuit. The *Keyworth* court stated:

> [Merck] is not in the business of purchasing and collecting such claims. It has no other stake in the bankruptcy proceeding . . .
>
> From these facts the Court can draw logical inferences, and in doing so it cannot close its eyes to the real world. One asks, "Why did Merck buy this $50.00 claim and object to the Keyworths' claimed exemption?" There must have been some reason, and it is only logical to infer that Merck saw some benefit for itself. Prior to purchasing the claim, it had no interest whatsoever in this bankruptcy. . .
>
> Faced with these facts, this Court is of the opinion that Merck is simply harassing the Keyworths or they seek some subtle advantage in the state court litigation . . . Whatever the reason, this Court cannot fathom any purpose justifying Merck's actions.

*Id.* at 972.

17. Sbriglio's actions in these Chapter 7 Cases are no different than Merck's in *Keyworth*—a transparent attempt to manipulate the bankruptcy process to gain an improper advantage in unrelated litigation. Like Merck, Sbriglio had no connection to these Chapter 7 Cases prior to purchasing the Purchased Claim and has provided no evidence that she is in the business of purchasing and collecting bankruptcy claims. Further, in the plan voting context, courts in the Second Circuit routinely find that, when a claim is purchased to aid interests other than that of a creditor, the purchase was made in bad faith, which is a basis to disqualify or designate their vote.[5]

---

[5] *See, e.g., In re P-R Holding Corp.*, 147 F.2d 895, 897-98 (2d. Cir. 1945) (finding that claim purchases "were in 'bad faith'" and disqualifying their votes after stating that when a "purchase is in aid of an interest other than an interest of a creditor, such purchases may amount of 'bad faith'"); *In re Dune Deck Owners Corp.*, 175 B.R. 839, 844 (Bankr. S.D.N.Y. 1995) ("Designation is the exception rather than the rule, and a creditor is free to vote its self-interest with respect to its claim. On the other hand, where the 'purchase is in aid of an interest other than an interest of a creditor, such purchases may amount to bad faith.'") (internal citations omitted); *In re Fagerdala USA-Lompoc*, 891 F.3d 848, 856-57 (9th Cir. 2018) ("As the Second Circuit noted, bad faith is found when '[t]he purchasing party . . . was less interested in maximizing the return on its claim than in diverting the progress of the proceedings to achieve an outside benefit.'").

18. Additionally, unlike in *Keyworth*, this Court does not have to disallow the Purchased Claim or find that Sbriglio lacks party in interest standing in order to deny the Motion. Rather, the Court can and should find that, due to Sbriglio's transparent actions, there is not good cause for the requested Bankruptcy Rule 2004 discovery and deny the Motion.[6]

**C. The Size of the Purchased Claim Necessarily Means the Burden Imposed by the Requested Discovery Outweighs Any Benefit to Sbriglio**

19. The size of the Purchased Claim compared to the burden Sbriglio is attempting to place on the Debtors' estates and the Trustee and his professionals provides another basis to find that good cause does not exist to grant the Motion. In *SunEdison*, a creditor with a claim holding claims against the debtors in excess of $2.5 million filed a Bankruptcy Rule 2004 motion requesting discovery from the Debtor. *See In re SunEdison, Inc.*, 562 B.R. 243, 246 (Bankr. S.D.N.Y. 2017). As stated above, the *SunEdison* court denied the request primarily because it found the true purpose of the requested discovery was for use in another proceeding, not in the bankruptcy case where the creditor was requesting relief. *See* supra at ¶ 11. However, the *SunEdison* court also found that the request should be denied because (i) the claims, "while significant in face value are small when viewed in the context of chapter 11 cases involving over $5 billion in debt with little prospect of anything more than a small recovery for unsecured creditors" and (ii) the cost of compliance with the requested production "may exceed [the creditor's] distribution in the Debtors' cases." *Id.* at 250.

---

[6] Sbriglio cannot respond that she needs the requested discovery to attempt to prove her Purchased Claim. None of the information or documents requested by the Motion will be helpful in any attempt to prove the Purchased Claim. Indeed, Sbriglio's document requests, attached as Exhibit A to the Motion, are identical to the document requests made by the Data Breach Plaintiffs, whose claims against the Debtors are completely different from the Purchased Claim. This is further evidence that the purpose of the Motion is to further Sbriglio's interests in unrelated state court litigation, and, therefore, serves as additional evidence of Sbriglio's bad faith conduct in purchasing the Purchased Claim and filing the Motion.

20. Here the cost of complying with the requested relief (which, at a minimum would require the negotiation of a confidentiality agreement, drafting of a privilege log and coordinating and providing the exchange of documents) compared to the size of the Purchased Claim, provides an even stronger basis to deny the Motion. Like in *SunEdison*, projected recoveries for unsecured creditors in these Chapter 7 Cases are minute (if any), but, unlike in *SunEdison*, the size of the Purchased Claim is not significant. Further because the Purchased Claim only has a face value of $650, it is a certainty that, if the Court grants the Motion, the cost of compliance will vastly exceed Sbriglio's distribution from the Purchased Claim.

## II. Even if Good Cause Exists for the Examination and the Motion is Granted, Sbriglio Should Be Prevented From Using the Requested Discovery Outside of These Chapter 7 Cases

21. Even if Sbriglio is able to demonstrate that the requested documents are necessary to prove her Purchased Claim and the court finds good cause exists for the requested discovery, Sbriglio should be prohibited from using any documents or information produced to Sbriglio pursuant to Bankruptcy Rule 2004 outside of these Chapter 7 Cases for any purpose. Significantly, the Data Breach 2004 Order limits the use of the document production to the Chapter 7 Cases or the MDL Action – both actions where the Debtors are parties, which is contrary to the Facebook Derivative Action in which the Debtors are not parties to the action.

22. Further, any document production should be subject to confidentiality restrictions and/or an appropriate protective order at least as restrictive as the confidentiality restrictions in the Data Breach 2004 Order. The Motion states that Sbriglio is seeking entry of her proposed order "to ensure the estate and its creditors, including Sbriglio, have as full and complete information as possible with respect to the Debtor's affairs, property, and financial condition." *See* Motion at 30. If this is the purpose of the Motion, then Sbriglio should be prevented from using of the documents and information produced to Sbriglio pursuant to Bankruptcy Rule 2004 for any

purpose outside of these Chapter 7 Cases. *See In re Recoton Corp.*, 307 B.R. 751, 756 (Bankr. S.D.N.Y. 2004) (stating that the proposed protective order governing discovery requested by creditors' committee "gives assurance that Rule 2004 discovery will not be used beyond the instant bankruptcy."). Given Sbriglio's transparent actions, if the Court disagrees with the Trustee and is inclined to grant the Motion, such a limitation is particularly appropriate here to ensure that Bankruptcy Rule 2004 discovery is not used for the "improper purpose of obtaining discovery for the pending state court civil litigation." *In re Bibhu LLC*, 2019 WL 171550, at *2 (Bankr. S.D.N.Y. Jan. 19, 2019).

## **CONCLUSION**

**WHEREFORE,** the Trustee respectfully requests that the Court deny Sbriglio's Motion and grant such other relief as is just and proper.

Dated: April 8, 2019
Wantagh, New York

**LaMonica Herbst & Maniscalco, LLP**
*Attorneys for the Chapter 7 Trustee*

By: ***s/ Jordan Pilevsky***
Jordan Pilevsky, Esq.
Michael T. Rozea, Esq.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500