**DILWORTH PAXSON LLP**
Anne Aaronson
99 Park Ave. #320
New York, NY 10016
(917) 675-4250 (Telephone)
(215) 575-7200 (Facsimile)
　　- and -
Catherine Pratsinakis
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
(215) 575-7013 (Telephone)

*Bankruptcy Counsel to Creditor Karen Sbriglio*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Cambridge Analytica, LLC,<br><br>　　　　Debtor. | Chapter 7<br><br>Case No. 18-11500 (SHL) |

### CREDITOR SBRIGLIO'S RESPONSE IN FURTHER SUPPORT OF
### HER REQUEST FOR DOCUMENTS FROM DEBTORS

　　Creditor Karen Sbriglio ("Sbriglio") responds to the Chapter 7 Trustee's Response and Objection, dated April 8, 2019, (the "Objection") to Sbriglio's Motion Pursuant To Bankruptcy Rule 2004 (the "Motion") for an Order Directing the Production of Documents from Cambridge Analytica LLC ("Cambridge Analytica" or "Debtor," and collectively with SCL USA, Inc., the "Debtors"). Trustee Salvatore LaMonica ("Trustee") must produce the documents responsive to the Delaware Subpoenas (defined below) pursuant to Bankruptcy Rule of Procedure 7037 and Bankruptcy Rule 2004.

### BASIS FOR RELIEF

　　Trustee's objection to the reproduction to Sbriglio of the same documents already being produced to the Data Breach Plaintiffs fails for several reasons.

1

*First*, Debtors (and therefore Trustee) cannot escape their obligation to respond to the subpoenas served in connection with the Delaware shareholder action prior to the filing of the bankruptcy proceeding (the "Delaware Subpoenas"), which include many of the same requests that are subject to production under Bankruptcy Rule 2004. (*See infra* Section A.) Trustee was aware of the Debtors' failure to comply with this obligation and, to avoid a motion to compel, Trustee actively misled Sbriglio with promises and assurances that it would respond to the Delaware Subpoenas with copies of the documents that were being produced to the Data Breach Plaintiffs and to non-creditor Facebook in the context of Bankruptcy Rule 2004. *See* the Declaration of Catherine Pratsinakis, dated April 26, 2019, filed simultaneously herewith [hereinafter, "Pratsinakis Decl."]. On January 24, 2019, in an utter waste of time and resources of the parties and this Court, Trustee suddenly and inexplicably reneged on that promise, prompting the instant request for relief. Trustee is required to respond to the Delaware Subpoenas; therefore, Sbriglio is entitled to receive the documents to which she is already entitled through the Delaware Subpoenas, which are also properly sought under Rule 2004.

*Second*, under Rule 2004, Sbriglio should have the *same* right to access the *same* documents that Trustee has already agreed to produce to the Data Breach Plaintiffs and to Facebook. In fact, Facebook is receiving copies of the Debtors' documents even though it is not a creditor nor had it formally sought the documents pursuant to Bankruptcy Rule 2004 (much less shown good cause under Rule 2004). The reproduction of documents that has already been reviewed, compiled, and will be produced to a similarly-situated creditor and to Facebook – which calls itself a "party in interest"– cannot possibly burden the bankruptcy estates. (*See infra* Section B.)

2

**A.**   **Trustee Reneged on His Promise to Produce Documents in Response to the Subpoenas Served on the Non-Party Debtors Prior to the Bankruptcy Filing**

1. On April 25, 2018, Sbriglio initiated her stockholder derivative suit against Facebook's management in the Delaware Court of Chancery, C.A. No. 2018-0307-JRS. (Pratsinakis Decl. at ¶ 2.)

2. On May 7, 2018, Sbriglio issued and served the Delaware Subpoenas on Cambridge Analytica LLC, Cambridge Analytica, Inc., Cambridge Analytica Holdings, LLC in connection with the Delaware Derivative Action. (True and correct copies of the Delaware Subpoenas are attached as Exhibit A to the Pratsinakis Decl.)

3. The Delaware Subpoenas sought information relevant to the Delaware Derivative Action that is in the possession of Debtors in these bankruptcy proceedings. (*Id.*)

4. On May 17, 2018, the Debtors each filed for bankruptcy relief in this Court.

5. On May 22, 2018 Movant Sbriglio emailed Trustee to notify him about the impending deadline to respond to the Delaware Subpoenas and attached copies of the Delaware Subpoenas. (Pratsinakis Decl. at ¶ 5.)

6. Trustee was required to respond to the Delaware Subpoenas by June 7, 2018. However, despite having actual notice, Trustee failed to respond, thereby waiving any and all objections to the Delaware Subpoenas.

7. As set forth in greater detail in the Pratsinakis Declaration attached hereto, over the course of multiple conversations and emails that had taken place over the prior eight months, starting in June 2018, Trustee (via his counsel) promised to provide Sbriglio (via her counsel) a copy set of the documents in Debtor' possession, the same set of documents promised to the Data Breach Plaintiffs and Facebook. (Pratsinakis Decl. at ¶¶ 8-26.) And in various emails and

conversions confirming that agreement, Trustee raised no objection. (*See, e.g., Id.* at ¶¶13, 15, 17, 18, 20-21.)

8.  Trustee repeatedly represented that the production would be made as soon as the Trustee secured a court order setting forth a process for the production of documents to third parties. (*Id.*) Sbriglio accepted Trustee's promise and assurances and refrained from moving to compel responses to the Delaware Subpoenas on the basis of those promises and assurances. (*Id.* at ¶¶ 11-12.) Thereafter, on January 24, 2019, Trustee reneged on his promise and this led to the filing of the Rule 2004 motion and present motion to compel Trustee to produce documents responsive to the Delaware Subpoenas. (*Id.* at ¶ 25.)

9.  Debtors owe Sbriglio responses to her Delaware Subpoenas. Pursuant to Del. Ch. Ct. R. 45(e), "[f]ailure by any person without adequate excuse to obey a subpoena served upon the person may be deemed a contempt." The filing of a bankruptcy is no excuse for a debtor's failure to respond to a subpoena issued in connection with a third party action. *See, e.g., Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, Civ. No. 13-4650, 2014 WL 4783008, at *5 (S.D.N.Y. Sept. 25, 2014) (compelling debtor to respond to subpoenas in third party suit).

10. It is also well-settled law in the Southern District that the automatic stay, 11 U.S.C. § 362(a), does not bar litigants from obtaining discovery from a debtor as a "third-party witness where the requests pertain to claims against the non-debtor parties." *Id*. See also *In re Residential Capital, LLC*, 480 B.R. 529, 536-37 (Bankr. S.D.N.Y. 2012) (Section 362(a) does not protect debtors from discovery in third-party actions).

11. Trustee relies on *In re Bibhu LLC*, No. 17-10042, 2019 WL 171550, at *2 (Bankr. S.D.N.Y. Jan. 10, 2019) (slip op.), but that case **supports Sbriglio** obtaining access to the documents at issue. The *Bibhu* court expressly held that "[d]espite the automatic stay, a

4

chapter 11 debtor is not exempt from discovery obligations in third-party lawsuits" and that to "the extent that discovery is required from the Debtor in connection with the state court action … the Court's opinion in *Residential* Capital, 480 B.R. 529, explains a path forward." *Id.* at *3. Here, as in *Residential Capital,* the Debtors owe Sbriglio responses to her Delaware Subpoenas issued in the third-party Delaware Derivative Action. 480 B.R. at 636-37. Debtors are not named as defendants in the Delaware Derivative Action and they possess documents that are relevant to the Delaware Derivative Action that cannot be obtained from other sources. Thus, the automatic stay does not protect Trustee from the pending discovery obligations. *See id.; In re Breitburn Energy Partners LP*, 571 B.R. 59, 69 (Bankr. S.D.N.Y. 2017) (the automatic stay does not protect the Debtors from pre-trial discovery in the Texas litigation).

12.     Knowing this, Trustee seeks to side-step its obligations to respond to the Delaware Subpoenas by claiming the Delaware Derivative Action has been stayed. First, Trustee cites to no case law to support his theory that a subpoena can be ignored where a case is temporarily stayed. Second, Trustee misstates the scope of the stay. The Delaware Court of Chancery stayed the Delaware Derivative Action to permit the completion of a books and records action against Facebook in the Court of Chancery. Thus, the point of the stay was to permit the parties to gather any additional information from Facebook allowable under Section 220 of the Delaware General Corporation Law, 8 *Del. C.* § 220. When asked about the contours of the stay, the Court explained that the scope of its stay "*is really just a stay of filings*. If you-all are talking, you should continue to talk. I would encourage that. *And if there is production occurring off-line, meaning outside of the context of litigation, I certainly encourage that as well. That makes, in fact, a lot of sense to me.*" (*See* Excerpt from the Transcript of the hearing held on December 17, 2018 in the Delaware Action, Pratsinakis Decl., Ex. P, at 65-66 (emphases

5

added).) In other words, the Court's order did not stay fact-finding efforts outside of the Delaware Derivative Action, it *encouraged them*. Sbriglio was having discovery discussions with Trustee and had reached an agreement - one that Trustee has breached by now refusing to produce documents to Sbriglio.

13.     Debtors are not parties in the Delaware Derivative Action and as such they are required to produce documents pursuant to the Delaware Subpoenas. The automatic stay does not apply, and Sbriglio need not seek relief from the automatic stay to file its motion to compel production of documents responsive to the Delaware Subpoenas. *See, e.g.*, *Peter Rosenbaum Photography Corp.*, No. 04 C 0767, 2004 WL 2973822, at *3 (N.D. Ill. Nov. 30, 2004), *on reconsideration in part sub nom. Peter Rosenbaum Photography Corp. v. Otto Doosan Mail Order Ltd.*, No. 04 C 0767, 2004 WL 3201008 (N.D. Ill. Dec. 15, 2004) (the automatic stay is inapplicable to debtor as non-party in the litigation and "[a]ccordingly, plaintiff's motion to compel Spiegel's response to its subpoenas is granted" and further finding that a motion for relief from the automatic stay to file the motion to compel is not necessary because if that were the case "the bankruptcy court would likely be inundated with motions to lift the automatic stay for every discovery request, even if unrelated to any action against the debtor.").

14.     Trustee should be ordered to produce the promised documents consistent with his prior agreement to do so (and as the Debtors are required to do in connection with the Delaware Subpoenas). *See, e.g.*, *In re Airlift Int'l, Inc.*, 761 F.2d 1503, 1512 (11th Cir. 1985) ("It is well-settled that when the debtor or trustee enters into a post-petition agreement he is bound by the terms of such agreement, and if he receives the benefits he must adopt the burdens.").

15.     The record set forth in the Declaration of Catherine Pratsinakis supports the finding that Trustee gave false verbal and written assurances that Sbriglio would be given access

to Debtors' documents upon Trustee's request for an appropriate court order, only he never requested one. Sbriglio relied on Trustee's assurances to her detriment by forgoing the filing of her motion to compel that she would have filed eight months earlier.

16.     "The elements of a claim for promissory estoppel are: (1) a promise that is sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance." *Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 257 F. Supp. 3d 348, 360–61 (S.D.N.Y. 2017). Here, (1) Trustee promised to produce the documents sought by Sbriglio once the proper procedures and order were in place; (2) Sbriglio reasonably relied on Trustee's promises and assurances by forgoing the filing of her motion to compel and waiting patiently for months; (3) Trustee failed to honor his agreement; and (4) caused harm to Sbriglio because it wasted time and resources. Sbriglio has to now expend addition time and resources with the present motion practice to compel the production of the subpoenaed documents.

**B.      Sbriglio Has Demonstrated Good Cause Under Rule 2004 and No Burden on the Estate Exists**

17.     Bankruptcy Rule 2004 discovery is "appropriate for revealing the nature and extent of the bankruptcy estate. . . and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002). Further, "Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards. It can be legitimately compared to a fishing expedition." *In re China Fishery Grp. Ltd.*, No. 16-11895 (JLG), 2017 WL 3084397, at *4 (Bankr. S.D.N.Y. July 19, 2017).

18.     To access discovery under Rule 2004, the movant must show "good cause," which is then balanced against the burden and expense on the debtor's estate. *See In re*

*SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017). Sbriglio has demonstrated good cause. She is a creditor of the Cambridge Analytica bankruptcy estate holding a liquidated contract claim, is a party in interest, and has been promised documents that are subject to several Rule 2004 proceedings.

19. The documents and information sought by her Rule 2004 Subpoena are basic and necessary to help ensure that the estate and its creditors have full and complete information regarding the Debtor's business affairs and financial condition. It is critical that the Debtor disclose as much information as possible regarding the value of its assets and the nature of its prepetition transactions and business operations. This information is relevant to the liquidation of the Debtor's businesses and recovery by creditors, including Sbriglio. Where, as here, Sbriglio seeks to "discover the nature and extent of the bankruptcy estate in order to distribute the debtor's assets for the benefit of its creditors," the Rule 2004 Subpoena is warranted. *In re Bibhu LLC*, 2019 WL 171550, at *2; *see also In re China Fishery Grp. Ltd.*, No. 16-11895 (JLG), 2017 WL 3084397, at *4 (Bankr. S.D.N.Y. July 19, 2017) (holding the purpose of Rule 2004 is to permit a broad investigation into the affairs of the debtor, and to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred.").

20. Significantly, by granting Sbriglio's Motion, there is no harm to the bankruptcy estate because the Debtor is already gathering and producing the documents to one other similarly-situated creditor and to Facebook, a party in interest.

21. Trustee claims that reproducing a copy set of documents to Sbriglio will burden Debtors' estates. *See* Objection at 3. This claim is unsupported and is belied by the facts. In her Rule 2004 Subpoena, Sbriglio seeks no more documents than those that have already been

8

committed to the Data Breach Plaintiffs and, therefore, there is no burden or expense associated with the reproduction of an existing set of compiled documents. Sbriglio also agreed to maintain the confidentiality of the documents and, as required, she would file the information under seal and redact the information from any public version of the filing. Since Sbriglio is willing to accept the same documents, the same privilege log of documents produced to the Data Breach Plaintiffs would also be produced to Sbriglio. Thus, the documents will have already been compiled, the privilege log drafted and a confidentiality agreement will have already been finalized with respect to the Data Breach Plaintiffs that can serve as the model for the one with Sbriglio. There are no expenses or burdens to Trustee, making his refusal to honor his agreement with Sbriglio even more inexplicable. In truth, the expenses and burdens have already been incurred over more than eight months of discussions and emails followed by broken promises and the present motion practice. There will be no additional burden associated with Trustee reproducing the same set of documents to Sbriglio that it is obligated to produce to creditor Data Breach Plaintiffs and to Facebook.

22. Trustee's opposition to Sbriglio's Rule 2004 Subpoena on the basis of the small dollar amount of Sbriglio's claim is discriminatory and Trustee cites no support for his opposition. The Bankruptcy Court does not evaluate the size of the creditor's claim when evaluating whether to grant a Rule 2004 motion. *See* F.R.B.P. 2004(a) ("On motion of any party in interest, the court may order the examination of any entity."). Rather, as discussed above, the standard is "good cause."

23. Trustee also has no legitimate reason to prevent Sbriglio from using Debtors' documents in her Delaware Derivative Action. Courts routinely permit a debtor's documents to be used in third-party actions as debtors are required to respond to subpoenas in such actions.

This argument is particularly specious here given that Trustee has already allowed this information to be used in the Data Breach action *in which Debtors are named parties*. Trustee has failed to adequately explain why Sbriglio should be treated any differently than the Data Breach Plaintiffs. (*See* Dkt.# 106.)

24. None of Trustee's cited cases support his objection. As set forth above, *Bibhu*, 2019 WL 171550 at *3, actually favors the production to Sbriglio of the documents at issue. Moreover, *In re SunEdison, Inc.*, 562 B.R. 243 (Bankr. S.D.N.Y.), is completely inapposite. There the court found that the burden on the debtor's estate was enormous, the creditor had already received 1,200 pages of relevant documents, and the creditor had a more direct means of obtaining the documents needed in a separate insolvency proceeding. And, despite all of this, the Court still ordered the production of more information to the creditor.

25. Here, there is practically zero burden on the estate, there is no other source for the information, and despite having served her Delaware Subpoenas nearly a year ago, she has not received a single document to date. Finally, Trustee's reliance on a nearly 35 year old District of Colorado federal decision, *In re Keyworth*, 47 B.R. 966 (D. Colo. 1985), is likewise completely misplaced. In *Keyworth*, the debtor sued a corporate defendant in a lawsuit and that corporate defendant later bought a claim from a creditor in the bankruptcy so that it could assert its objection that proceeds from the lawsuit were not exempt property from the estate. The company defendant sought to misuse its standing as a creditor to seek an advantage in the lawsuit and/or to "harass[ ]" the debtors. 47 B.R. at 971-72. As a court of equity, the Bankruptcy Court denied the request for relief. Here, equity favors Sbriglio – who for eight months relied in good faith on the representations of Trustee and false reassurances that Sbriglio would receive the

same set of documents that are being produced by Trustee to Facebook and the Data Breach Plaintiffs.

## CONCLUSION

26. Based on the foregoing, and the facts and authorities set forth in the Motion and the Pratsinakis Declaration, Sbriglio respectfully requests that the Court grant the Motion and enter an order directing Trustee to produce all of the documents in the various entities' custody, control, or possession that are described in the Rule 2004 Subpoena. Alternatively, Sbriglio requests an order compelling Trustee to produce the documents responsive to the Delaware Subpoenas, which the Debtors are obligated to, but have refused, to produce. Sbriglio further requests such other relief as the Court deems just and proper.

Dated: April 26, 2019

/s/ Anne Aaronson
Anne Aaronson ( Id. No. AA1679)
**DILWORTH PAXSON LLP**
99 Park Ave. #320
New York, NY 10016
(917) 675-4250 (Telephone)
(215) 575-7200 (Facsimile)

- and-

Catherine Pratsinakis (Id. No. 4820)
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
(215) 575-7013 (telephone)
aaaronson@dilworthlaw.com
*Counsel to Karen Sbriglio*

11