**DILWORTH PAXSON LLP**
Anne Aaronson
99 Park Ave. #320
New York, NY 10016
(917) 675-4250 (Telephone)
(215) 575-7200 (Facsimile)
            - and-
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
(215) 575-7013 (telephone)

*Bankruptcy Counsel to Creditor Karen Sbriglio*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| Cambridge Analytica, LLC, | Case No. 18-11500 (SHL) |
| Debtor. | |

### DECLARATION OF CATHERINE PRATSINAKIS IN FURTHER SUPPORT OF CREDITOR KAREN SBRIGLIO'S REQUEST FOR DOCUMENTS FROM DEBTORS

I, Catherine Pratsinakis, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am an attorney with the law firm of Dilworth Paxson LLP, attorney for creditor Karen Sbriglio ("Sbriglio") in the above-captioned action. I submit this declaration in further support of Creditor Sbriglio's Request for Documents pursuant to Bankruptcy Rule 2004 from debtor Cambridge Analytica LLC ("Cambridge Analytica," and collectively with SCL USA, Inc. the "Debtors").

2. On April 25, 2018, Karen Sbriglio filed her verified stockholder derivative complaint against Facebook's directors and officers in the Delaware Court of Chancery (the

"Delaware Derivative Action") asserting shareholder claims following the news of Facebook's management's illegal sharing of data with Debtors.

3.  In connection with the Delaware Derivative Action, on May 7, 2018, Sbriglio issued and served subpoenas on Cambridge Analytica LLC, Cambridge Analytica, Inc., and Cambridge Analytica Holdings, LLC (the "Delaware Subpoenas"). True and correct copies of the Delaware Subpoenas are attached hereto as Exhibit A.

4.  On May 17, 2018, Debtors filed for Chapter 7 relief.

5.  On May 22, 2018, I emailed the Delaware Subpoenas to Trustee Salvatore LaMonica ("Trustee") and provided him the hold letters sent to Debtors requesting that their documents and information be preserved. A true and correct copy of this email is attached hereto as Exhibit B.

6.  Trustee had until June 7, 2018 to respond or object to the Delaware Subpoenas. *See* Exhibit A. As of the date of this Declaration, Trustee has provided no response to the Delaware Subpoenas on behalf of Debtors, nor has he formally or informally objected to them.

7.  On June 14, 2018, I sent a second email to Trustee advising that Debtors' responses were now overdue and asking that he respond to the email. A true and correct copy of this email is attached hereto as Exhibit C.

8.  Later that day, attorney Jordan Pilevsky ("Pilevsky") sent me an email introducing himself as counsel for the Trustee and stating that he was reaching out "with respect to the pre-petition subpoena you served on the debtor." A true and correct copy of this email is attached hereto as Exhibit D.

9.  On Monday, June 18, 2019, Trustees' counsel Pilevsky and Michael Rozea and I held a telephone conference call during which we discussed the Delaware Subpoenas. I asked

2

whether Trustee would be willing to cooperate in lieu of us filing a motion to compel Trustee's responses on behalf of Debtors. Pilevsky advised that he was still gathering documents and that before he could share documents with us he needed to put together an order setting out procedures for third parties' access to Debtors' documents.

10. We agreed not to file a motion to compel at that time so that Trustee would have an opportunity to compile Debtors' documents.

11. On July 18, 2018, in response to my request for an update, Trustee stated: "I suggest you work with my counsel to set up a conference call to discuss this matter and the implications of the automatic stay. . . In the meantime I reserve all rights in connection with the subpoena and the automatic Stay [sic]." A true and correct copy of this email is attached hereto as Exhibit E.

12. On July 23, 2019 at 3:00 p.m., Pilevsky, Rozea and I held a second telephone conference call during which they provided an update. They reported that they were seeking to secure documents and information from the United Kingdom Liquidator Vince Green and that they needed an opportunity to review Debtors' documents and put together an order that would permit Trustee to share documents with us and other third parties. In reliance on these representations made by Pilevsky on the call, Sbriglio decided not to file a motion to compel responses to the Delaware Subpoenas.

13. On August 15, 2018, I sent an email summarizing our earlier call to ensure that the parties were on the same page:

> We spoke several weeks ago about the status of third parties' access to Cambridge Analytica's records. You mentioned that there were two buckets of info: (1) data mining data/Amazon web services; and (2) Google suite records (includes corporate emails, documents, finances, company books and records, etc.). You stated that the first bucket of information was being held by ICO which

3

> had no current plans to release the information either to you or Cambridge Analytica's UK liquidator, Vince Green. You also mentioned that the second bucket of information was in Mr. Green's possession and that before sharing the information with you, he was seeking advice from his counsel on whether sharing information with you would violate an enforcement order issued by the UK High Court. You anticipated receiving an update from Mr. Green a couple of weeks ago. You also stated that once you secure documents and have had a reasonable opportunity to review them for privilege etc., you would move for an order setting forth a reasonable procedure for third parties' access to documents.
>
> [If] I misunderstood any part of our conversation, please advise.

A true and correct copy of this email is attached hereto as Ex. F.

14. On August 21, 2018, I emailed counsel for an update and followed up again on August 22, 2018 upon reading an article in Law360 titled "Cambridge Analytica Agrees To Give Docs To Facebook Users." A true and correct copy of the email and article is attached hereto as Ex. G.

15. In my August 22, 2018 email I stated:

> Please advise whether you would be willing to provide us access to the same documents referenced below in the agreement you reached with Facebook users. We have been working with you in a courteous manner to secure documents in response to our pre-bankruptcy subpoenas while avoiding unnecessary motion practice. Indeed, you indicated on at least two phone calls that you would be willing to provide us these documents if and when they became available. It appears that documents are now available. Please advise if the same deal reached with Facebook users will be extended to us.

*Id.*

16. By email dated August 23, 2018, Michael Rozea, also counsel for Trustee, sent an email to me stating that "we first need to conference with the Trustee to consider [my request] (and set up a procedure/have necessary protective order and confidentiality agreement drafted and executed if agreed)." A true and correct copy of that email is attached hereto as Ex. H.

17. During the third telephone conference held on August 29, 2018, Pilevsky and Rozea once again reassured me, and my co-counsel David Straite, that Sbriglio would receive copies of the documents once procedures and a protective order were in place.

18. On September 7, 2018, I sent an email requesting an update on the "status of the trustee's production to us [Sbriglio]." A true and correct copy of that email is attached hereto as Ex. I.

19. That same day Rozea represented that:

> [W]e've circulated our comments to the Data Breach Plaintiffs' 2004 Order and that order is still being negotiated. Once that order is entered by the Court and there is a procedure set up, we plan on circulating a protective order and/or confidentiality agreement for execution prior to turning over the documents. We will be in touch once the 2004 order is entered.

A true and correct copy of that email is attached hereto as Ex. J.

20. On October 9, 2018, in response to my email asking that he advise me of any issues, Rozea stated that "the order directing the Trustee to produce documents has not been entered by the Court yet" and advised that he would have an update for me after a hearing to be held on October 16, 2018. A true and correct copy of that email is attached hereto as Ex. K.

21. On October 25, 2018, in response to my email asking for an update, Rozea advised that "the judge did not enter the order at the hearing held on 10/24. The matter was further adjourned to 11/20. Will advise once the order has been agreed and entered into." A true and correct copy of that email is attached hereto as Ex. L.

22. On November 29, 2018, in response to an email from me requesting an update, Rozea advised that "the order has yet to be agreed to between the parties. There is a hearing on the 2004 Motion presently scheduled for 12/11. Will advise once the order is entered." A true and correct copy of that email is attached hereto as Ex. M.

23. On December 14, 2018, I sent an email to Rozea stating "Could you provide us an update? My understanding is that there was a bankruptcy hearing earlier this week with respect to the discovery we have been promised." To which on December 18, 2018, Rozea responded that "[a]n order was agreed to between all parties and it was submitted to the Court on 12/13. We'll advise once the order is entered." A true and correct copy of this email exchange is attached hereto as Ex. N.

24. On January 24, 2019, after numerous emails and requests for the status of Trustee's production to us, I had a conference call with Rozea and Pilevsky where they advised for the first time, after dozens of conversations and emails that had taken place over the prior eight months, that they would not be producing Debtors' documents.

25. This conversation was summarized in an email on January 25, 2019, as follows:

> To summarize yesterday's call, we were surprised to learn that you have decided to not honor your commitment to produce to us the same documents produced to Facebook and MDL data breach plaintiffs. You claimed for the first time, after months of discussions, that there was no agreement. We strongly disagree and have the emails to support our position.
>
> You then proposed asking the Trustee for permission to enter into a stipulation to provide us the same documents produced to Facebook and the MDL data breach plaintiffs. You further suggested that we get the consent of Facebook and the data breach plaintiffs. We disagree that their consent is needed but in the interest of compromise we will request their consent as soon as you confirm that the Trustee is on board. Also, as previously advised, we are willing to enter into a reasonable confidentiality agreement.
>
> Please let us know the Trustee's position by end of business on Monday, 1/28.

A true and correct copy of that email is attached hereto as Ex. O.

26.   On January 29, 2018, Rozea sent an email stating:

> Catherine - as discussed, contingent on your client first obtaining written consent from the bankruptcy attorneys for the MDL Data Breach Plaintiffs and Facebook, the Trustee is willing to enter into a stipulation to provide your client with the same documents that will be produced to Facebook and the MDL Data Breach Plaintiffs under the same terms and a substantially similar NDA.
>
> We will get back to you as to whether the stipulation requires court approval. Once we receive the written consent from the above-referenced parties, we will prepare and circulate a stipulation.

*See id.*

27.   Prior to filing our motion, we sought consent from counsel for Data Breach Plaintiffs and Facebook's counsel.

28.   Counsel for Data Breach Plaintiffs did not object to our receiving a copy of the Debtors' documents.

29.   Counsel for Facebook delayed responding and then objected to Sbriglio receiving the documents, even if they are produced subject to the same terms and conditions as the Confidentiality Agreement negotiated by the parties.

30.   Attached hereto as Exhibit P is a true and correct copy of an excerpt pages 65-66 of the transcript for the hearing held on December 17, 2018 in the Delaware Action, *Sbriglio v. Zuckerberg, et al.*, C.A. No. 2019-0307-JRS.

4/26/19
Date

Catherine Pratsinakis